UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| U.S. BANK NATIONAL ASSOCIATION, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:10CV421 CDP |
|  | ) |  |
| ROGER D. CANNY, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM AND ORDER**

Plaintiff U.S. Bank National Association brought this collection suit against individuals who had guaranteed loans it made to Western Feed Yard, Inc. Defendants filed counterclaims alleging breach of contract and the covenant of good faith and fair dealing, fraud, and negligent misrepresentation. U.S. Bank now seeks dismissal of defendants' counterclaims. It argues that the Missouri Credit Agreement Statute bars the contract and negligent misrepresentation claims, and that the fraud claim is not plead with sufficient particularity. I agree with these arguments and will grant the motions to dismiss the counterclaims. U.S. Bank also seeks to strike the defendants' jury demand, but I will deny that motion because questions remain about the waiver of jury trial that defendants signed.

## Background

In this litigation, plaintiff U.S. Bank seeks to recover the remaining debt on commercial loans. Each year, beginning around 2003 and continuing until 2007, U.S. Bank offered Western Feed step-down loans, as well as loans for operating costs and financing. Each year, the loans totaled several million dollars. Western Feed defaulted on the 2007 loans and U.S. Bank brought suit to recover the unpaid balances from the individuals who guaranteed the loans, defendants Roger Canny, Mary Canny, Michael Stanton, and Danny Stanton. Western Feed is not a party to this suit.

The guarantors agreed to back Western Feed's loans as part of a forbearance agreement, in which U.S. Bank would postpone collecting on the defaulted 2007 loans in return for the guarantors' promise to repay the loans, as well as certain other concessions. The forbearance agreements state that in consideration for U.S. Bank's delay in collection, the guarantors would waive their right to assert legal claims against U.S. Bank, that all terms of the agreement are included in the writing, that the writing cannot be modified orally, and that the parties waived their right to demand a jury trial.[1]

---

[1] The jury trial waiver is stated in bold and all capital letters in the original forbearance agreement, but not specifically listed in any of the amendments. All of the amendments state that, unless otherwise stated, all previous provisions remain in effect. The jury trial waiver was

The initial forbearance agreement contains approximately eleven pages of text and five pages of signatures, while each of the three amendments to the forbearance agreement contain four pages of text and five pages of signatures. In all of the documents, the text is broken into relatively short, numbered paragraphs setting out the terms of the agreement. The typeface and font is generally consistent throughout the documents,[2] and is relatively easy to read.

The guarantors assert counterclaims of (1) breach of contract and the covenant of good faith and fair dealing, (2) fraud, and (3) negligent misrepresentation.[3] They have also requested a jury trial. The guarantors allege that before 2007 U.S. Bank had always informally allowed Western Feed to renegotiate its yearly loans and offered Western Feed new loans, even when Western Feed was technically in default. They allege that U.S. Bank promised that it would renegotiate the 2007 series of loans in a similar manner. They do not allege when these promises were made, who made these promises, or in what form

---

not addressed in the later agreements.

[2] The language required by the Missouri Credit Agreement Statute is presented in bold and written in all capital letters.

[3] During the course of briefing this motion, defendants filed an amended answer and counterclaim and plaintiff moved to strike the amendment. Defendants then filed a motion for leave. I will allow the defendants to amend the answer and counterclaim and I will consider the motion as directed to the amended pleadings.

these promises were communicated to them. All of the guarantors' counterclaims are based on these alleged oral promises. The guarantors do not claim that U.S. Bank breached the written agreements that form the basis of U.S. Bank's suit against them.

**Analysis**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when the alleged facts demonstrate a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* A court should assume well-pled facts to be true and then determine whether they plausibly entitle the plaintiff to relief. *Id.* at 1949-50.

**1.     Counts I & III**

U.S. Bank argues that the Missouri Credit Agreement Statute, Mo. Ann. Stat. § 432.047 (West 1992), bars the guarantors' counterclaim for breach of contract and the covenant of good faith and fair dealing and for negligent misrepresentation (Counts I and III). The Missouri Credit Agreement Statute acts as a statute of frauds to protect banks from losing their right to enforce a loan according to the terms of the written loan documents, if they informally attempt to

accommodate debtors. 6 Mo. Prac. Series, Legal Forms § 3.3 (3d ed). Section 432.047 of the statute bars claims by debtors against lenders based on oral promises to modify commercial credit agreements. *See* Mo. Ann. Stat. § 432.047. The statute states:

> 1. For the purposes of this section, the term "credit agreement" means an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation.
>
> 2. A debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or for other consideration, and sets forth the relevant terms and conditions.
>
> . . .
>
> 3. (2) Notwithstanding any other law to the contrary in this chapter, the provisions of this section shall apply to commercial credit agreements only and shall not apply to credit agreements for personal, family, or household purposes.

Mo. Ann. Stat. § 432.047.[4]

The guarantors' claims based on oral promises to modify commercial credit agreements fall within the coverage of the statutes. The underlying loan agreement, the guaranties, and the forbearance agreements all qualify as

---

[4]This section does not apply unless the contract includes the specific language described in §432.047(3)(1). All of the forbearance agreements at issue in this case explicitly include this language.

agreements to "lend or forbear the repayment of money . . . or to make any other financial accommodation." Similarly, the loans and the guaranties are the type of commercial credit agreement governed by the statute. Despite the guarantors' argument that these were not commercial loans, it is implausible that the operating loans made to Western Feed in order to carry out its business were for the personal or household use of the guarantors.

In addition, the statute was created to bar the type of claims made in Counts I and III of defendants' counterclaim. These counts assert a contract and a tort claim, respectively. Subsection 2 is broadly worded and bars claims "in any way related" to a credit agreement, unless the agreement is in writing. *See* Mo. Ann. Stat. § 432.047(2). A Missouri court, interpreting a predecessor to this statute, found that it would bar both contract and tort claims if it had prohibited actions "in any way related to a credit agreement," instead of being limited to barring an "action upon" a credit agreement.[5] *Mika v. Central Bank of Kansas City*, 1112 S.W.3d 82, 89-93 (Mo. Ct. App. 2003). Other states have also interpreted similar provisions that include the "in any way related" language to bar contract, as well as tort actions. *See Jesco Const. Corp. v. Nationsbank Corp.*, 830 So.2d 989, 992-

---

[5]Section 432.047 was enacted approximately one year after the decision in *Mika* and the legislature used precisely the phrase recommended by that court in the statute. *See* 2004 Mo. Legis. Serv. H.B. 959 (Vernon's).

94 (La. 2002); *First Nat'l Bank in Staunton v. McBride Cheverolet, Inc.*, 642 N.E.2d 138, 142 (Ill. Ct. App.1994). As a result, §432.047 bars both contract and tort claims related to commercial credit agreements.

Here, the guarantors' claims in contract and tort allege that U.S. Bank made oral promises to overlook Western Feed's default, to renegotiate its 2007 loans, and to extend the maturity dates of the loans. The guarantors do not state that these promises exist in any writing and do not claim that U.S. Bank breached the contracts that are documented in writing. As a result, the Missouri Credit Agreement Statute bars Counts I and III of the guarantors' counterclaim.

None of the guarantors' other arguments on this point alter this conclusion. The guarantors argue that the statute does not abrogate their common law right to bring their contract and tort claims against U.S. Bank. "Unless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid." *Mika*, 112 S.W.3d at 90. Here, the statute explicitly states that a "debtor may not maintain an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement." Mo. Ann. Stat. § 432.047(2). This broad language abrogating claims "regardless of legal theory" is sufficiently unambiguous to displace the common law on these facts.

Similarly, the guarantors' claims are not analogous to the claims found to be outside the reach of the statute in *Four A's Inv. Co. v. Bank of Am. Corp.*, No. 09-00351-CV-W-FJG, 2010 WL 2720713, at *4 (W.D. Mo. July 6, 2010). In that case, the court rested its decision on the fact that no credit agreement had yet been reached by the parties, and therefore, there was no "debtor" and the claims could not be "in any way related" to a credit agreement that did not yet exist. *See id*. Here, there is a valid credit agreement that progressed to default while the guarantors repeatedly signed guaranties and forbearance agreements regarding the defaulted 2007 loans. Therefore, the reasoning in *Four A's* does not apply.

**2.     Count II**

U.S. Bank argues that the guarantors did not plead their fraud claim (Count II) with sufficient particularity.[6] The defendants' brief does not address this portion of the motion at all. I agree that the count fails to plead fraud with particularity and so I will dismiss this count of defendants' counterclaim.

Rule 9(b), Fed. R. Civ. P., requires that the factual circumstances of the alleged fraud must be pled with particularity. Specifically, "the complaint must

---

[6]"To succeed in a fraud claim under Missouri law, a plaintiff must prove: (1) a defendant made a material representation; (2) with knowledge of its falsity; (3) with intent that plaintiff rely on that representation; (4) that the plaintiff was ignorant of the falsity; (5) that the plaintiff justifiably relied upon the representation; and (6) that plaintiff was damaged by that representation." *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 862 (8th Cir. 2010).

allege . . . the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Mitec Partners, LLC v. U.S. Bank Nat. Ass'n*, 605 F.3d 617, 622 (8th Cir. 2010). "In other words, the complaint must plead the who, what, where, when, and how of the alleged fraud." *Id.* "This higher degree of notice is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotations omitted).

The guarantors' counterclaim provides little detail about the claim of fraud. The guarantors describe the alleged fraud in the common section of their counterclaim as well as the paragraphs specific to their fraud claim. In the common section, the guarantors indicate that U.S. Bank had repeatedly promised to re-negotiate its loans with Western Feed at some point in the future in good faith. Two individuals are named and several dates are listed, but the guarantors do not connect these dates or individuals to the alleged fraud. In the paragraphs directed specifically to the claim of fraud, Western Feed provides no names or dates, and alleges fraud only by stating that U.S. Bank "represented that it would extend the maturity dates on the notes and renegotiate loan covenants . . . ." Based on these pleadings, the representation could have come at any time between

2003 and 2006, and could have been made by any number of individuals, at any place, in any medium of communication, and in any context. As a result, the guarantors' counterclaim does not provide sufficient information to allow U.S. Bank "to respond specifically and quickly" to Western Feed's allegation of fraud and so I will dismiss Count II of its counterclaim.

**3.     Defendants' Demand for a Jury Trial**

U.S. Bank argues that the guarantors waived their right to demand a jury trial in the guaranty and forbearance agreements. "To effectively waive a jury trial by contract, clear, unambiguous, unmistakable, and conspicuous language is required." *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. 1997). "Such a waiver provision will never be implied but must be clearly and explicitly stated." *Id.* When determining whether a party has waived its right to a jury trial, courts also look to the circumstances surrounding the waiver, such as the "negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision," as well as whether the party had signed the waiver after consulting an attorney. *Id.*

Although the documents indicate that the guarantors knowingly waived their right to a jury trial, the guarantors have raised questions regarding the

circumstances under which the waivers were signed.  The jury trial waiver is presented in the original forbearance agreement in a separate paragraph that contains only one relatively short sentence, in bold, and written in all capital letters immediately preceding the signature pages.  On its face, this document appears to be a clear waiver of the guarantors' right to demand a jury trial.  The guarantors, however, assert that they were either not aware of the waiver or were somehow pressured to unwillingly sign the waiver.  The guarantors allege that U.S. Bank enjoyed much greater bargaining power and that jury waivers are not generally expected in these types of contracts.  They also imply that they signed the waiver without consulting an attorney, that they did not understand the agreement or the waiver, and that they are not sophisticated business people.[7]  Taken as true, this is sufficient to raise a question regarding the voluntariness of the guarantors' waiver.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for leave to file an

---

[7]In their brief, the guarantors frequently alleged facts only hypothetically, making it difficult to determine which facts they are alleging to be true in this case, and which facts they know are not true, but address anyway because they are relevant in these types of cases, generally.  For instance, in response to U.S. Bank's assertion that the guarantors' attorney reviewed the guaranties and forbearance agreements, the guarantors do not allege the contrary, but instead only state that there is insufficient evidence to irrefutably prove this fact.  For purposes of this early motion, I have given the guarantors, as the non-moving party, the benefit of the doubt and assumed that they are, in fact, alleging all of the facts that they imply are true.

amended answer [#48] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendants' amended answer [#44] is DENIED.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendants' counterclaim and jury demand [#33] is GRANTED, in part, and DENIED, in part. All counts of defendants' counterclaim are dismissed. Plaintiff's motion to strike defendants' jury demand is denied without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2011.